IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

NORRIS JM BANKS                                    PLAINTIFF

v.                                       CIVIL ACTION NO. 4:15-cv-00341-GHD-CMC

UNITED STATES OF AMERICA                     DEFENDANT

## **MEMORANDUM OPINION GRANTING MOTION TO DISMISS DUE TO LACK OF SUBJECT-MATTER JURISDICTION**

Presently before the Court is a motion to dismiss [9] filed by Defendant, United States of America (the "Government"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Upon due consideration, the Court finds the motion should be granted on Rule 12(b)(1) grounds, because the Court lacks subject-matter jurisdiction over the case.

*A. Factual and Procedural Background*

In the case *sub judice*, Plaintiff Norris JM Banks ("Plaintiff") alleges that he injured his back while working at the North Chicago VA Medical Center on or around November 13, 2002, and thereafter filed a claim for compensation and medical benefits with the Department of Labor ("DOL"), Office of Workers' Compensation Programs ("OWCP"), due to lumbar back strain, aggravation of lumbar stenosis, and aggravation of neurogenic claudication.[1] Plaintiff began receiving temporary total disability benefits pursuant to the Federal Employees' Compensation Act ("FECA") effective January 2, 2003.[2] Plaintiff avers that on or around April 3, 2007, Dr. Paul

---

[1] *See* Pl.'s Compl. [1] ¶ 4; Def.'s Mot. Dismiss [9] at 4; Tritz Decl. [9-1] ¶ 4; DOL Employees' Comp. Appeals Bd. Decision & Order [9-2] at 1–2; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 2.

[2] *See* Pl.'s Compl. [1] ¶ 4; Def.'s Mot. Dismiss [9] at 4; Tritz Decl. [9-1] ¶ 5; Payment History Inquiry R. [9-3] at 1; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 2.

1

E. Barkhaus, a "referee medical examiner" for OWCP, examined Plaintiff and reported to OWCP that his medical conditions had ceased or were no longer injury-related.[3] Plaintiff further avers that based on that report OWCP terminated Plaintiff's compensation and medical benefits on July 18, 2007.[4]

Plaintiff alleges that "[a]fter [he] suffered more than a three-year loss of benefits and compensation," the attorney who represented Plaintiff in the OWCP case filed a motion for reconsideration of that decision, because he discovered Dr. Barkhaus was employed by the Milwaukee Veterans Administration Medical Center, and "[u]nder OWCP rules, physicians who are employed by or who are associated with federal agencies are prohibited from serving as referee medical examiners."[5] Plaintiff further maintains that "[u]pon consideration of said motion for reconsideration, OWCP determined that there was clear evidence on the part of OWCP in terminating [Plaintiff's] benefits due to Dr. Barkhaus' employment by the Veterans Administration Medical Center" and "affiliation with the Milwaukee Veterans Administration Medical Center" during "the time of [Dr. Barkhaus'] referee medical report to OWCP."[6] It is undisputed that OWCP committed an error of its own procedures in relying on Dr. Barkaus' report

---

[3] *See* Pl.'s Compl. [1] ¶ 5; Def.'s Mot. Dismiss [9] at 4; Tritz Decl. [9-1] ¶¶ 9–10; DOL Employees' Comp. Appeals Bd. Decision & Order [9-2] at 3; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 3, 5.

[4] *See* Pl.'s Compl. [1] ¶ 6; Def.'s Mot. Dismiss [9] at 4; Tritz Decl. [9-1] ¶¶ 9–10; DOL Employees' Comp. Appeals Bd. Decision & Order [9-2] at 3; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 6, 5.

[5] *See* Pl.'s Compl. [1] ¶ 7; Def.'s Mot. Dismiss [9] at 4–5; Tritz Decl. [9-1] ¶ 12; Pl.'s Request for Recons. to DOL/OWCP [9-4] at 1; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 7.

[6] *See* Pl.'s Compl. [1] ¶¶ 7–8; Def.'s Mot. Dismiss [9] at 5; Pl.'s Request for Recons. to DOL/OWCP [9-4] at 2; DOL/Office of Workers' Comp. Programs Letter to Pl. [9-5] at 2; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 8, 5.

to resolve a conflict of medical opinion,[7] and that due to that error, on September 1, 2010, OWCP granted Plaintiff's motion for reconsideration and restored full benefits to him; specifically, OWCP opened Plaintiff's claim for medical care and ordered that Plaintiff's compensation be reinstated for the period July 18, 2007 to the present.[8, 9] However, Plaintiff maintains that "in the process of seeking reinstatement of his benefits, [he] accumulated legal expense[s] of $32,551.05 and $1,200.00 in out-of-pocket medications and medical expenses," necessitating the taking out of a loan and an interest expense of approximately $15,000.00.[10] Plaintiff also maintains that he "suffered other financial adversities resulting from the suspension of [his] benefits," including his inability to afford health insurance, "the monthly cost of which rose from $270.00 to $800.00 during the suspension of [his] benefits," as well as his inability to afford regular medication for his pain and suffering.[11]

Plaintiff maintains that he submitted a claim to DOL's Employees' Compensation Appeals Board ("ECAB")/OWCP, Senior Claims Examiner, pursuant to 28 U.S.C. § 2675(a), for the alleged damages he sustained while pursuing the reinstatement of his benefits; the claim was sent

---

[7] See Pl.'s Compl. [1] ¶ 8; Pl.'s Request for Recons. to DOL/OWCP [9-4] at 2; DOL/Office of Workers' Comp. Programs Letter to Pl. [9-5] at 2; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 8, 5; Def.'s Reply Supp. Mot. Dismiss [18] at 3.

[8] See Pl.'s Compl. [1] ¶ 9; Def.'s Mot. Dismiss [9] at 5; Tritz Decl. [9-1] ¶ 13; DOL/Office of Workers' Comp. Programs Letter to Pl. [9-5] at 2, 5; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 9, 5.

[9] The Government states that Plaintiff's first payment was issued on October 8, 2010 for the period January 1, 2010 to September 25, 2010 in the amount of $31,964.40; that payments were issued on October 23, 2010 for the period September 26, 2010 to October 23, 2010 in the amount of $3,364.00; and that his last payment, as of the filing of the Government's motion to dismiss, was issued for the period August 23, 2015 to September 19, 2015. The Government further states that as of September 19, 2015, Plaintiff has received a total of $532,918.87 in temporary total disability compensation and $23,631.95 in medical benefits, and that payments for the retroactive compensation for the period July 18, 2007 to December 31, 2009 were processed on December 13, 2010. See Def.'s Mot. Dismiss [9] at 5.

[10] See Pl.'s Compl. [1] ¶ 9; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 9.

[11] See Pl.'s Compl. [1] ¶ 10; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 10.

on or about October 30, 2013 and was received by the DOL/OWCP on November 4, 2013.[12] The Government acknowledges that Plaintiff sent a Standard Form 95 to OWCP and that the same was received on November 5, 2013 and "put in [Plaintiff's] FECA case record," but that "the proper place to file a claim of that amount was with the DOL's Office of the Solicitor."[13] It is undisputed that the Government took no action on Plaintiff's submission. Plaintiff asserts that DOL's failure to make a final disposition of the claim for more than six months constitutes the agency's denial of his claim[14] (though he acknowledges the claim "never has been formally rejected"); subsequently, on May 15, 2015, Plaintiff filed this suit against the Government pursuant to 28 U.S.C. § 1346(b) of the Federal Tort Claims Act (the "FTCA").[15] Plaintiff seeks a judgment against the Government in the amount of $200,000.00 for the legal and medical expenses allegedly incurred while Plaintiff sought the reinstatement of his benefits from July 18, 2007 (the date his benefits were terminated) until September 1, 2010 (the date his benefits were fully restored).[16]

In lieu of an answer, the Government has filed the present motion to dismiss [9] pursuant to Rule 12(b)(1) and Rule 12(b)(6). Plaintiff has filed a response, and the Government has filed a reply. The matter is now ripe for review. Because the Court finds that dismissal is proper on the Government's first argument for dismissal, that the Court lacks subject-matter jurisdiction to

---

[12] *See* Pl.'s Compl. [1] ¶ 4; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] at 6; Standard Form 95, Claim for Damage, Injury, or Death, to DOL ESA/OWCP [13-1] at 1–2.

[13] *See* Def.'s Mot. Dismiss [9] at 6. The Court notes that the Government incorrectly cites 29 C.F.R. § 15.4 in support of this statement; the correct supporting citation is 29 C.F.R. § 15.104.

[14] *See* Pl.'s Compl. [1] ¶ 4; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] at 6.

[15] *See* Pl.'s Compl. [1] ¶¶ 1, 4.

[16] *See id.* ¶¶ 9–11.

review the DOL's determinations under FECA, 5 U.S.C. § 8101 *et seq.*, the Court need not and does not reach the Government's other arguments for dismissal in the motion.[17]

*B. Rule 12(b)(1) Motion to Dismiss Standard*

Rule 12(b)(1) provides that a party may assert the defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). A court must address a Rule 12(b)(1) jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *Braatz, L.L.C. v. Red Mango FC, L.L.C.*, No. 15-10498, 2016 WL 1253679, at *2 (5th Cir. Mar. 30, 2016) (per curiam) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Addressing Rule 12(b)(1) arguments first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Kokkonen v. Guar. Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). "Subject-matter jurisdiction . . . refers to a tribunal's power to hear a case. It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) (internal quotation marks and citations omitted). " 'It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the

---

[17] The Government's other arguments not addressed by the Court in this opinion include the following: (1) pursuant to Rule 12(b)(1), this Court has no subject-matter jurisdiction over the claim for damages against the United States under the FTCA because FECA is Plaintiff's exclusive remedy for an injury that occurred on the job under 5 U.S.C. § 8116(c); (2) pursuant to Rule 12(b)(1), this Court has no subject-matter jurisdiction to review this case because Plaintiff's FTCA action is not based on a state law cause of action as required by 28 U.S.C. § 1346(b)(1); and (3) pursuant to Rule 12(b)(6), Plaintiff has failed to state a claim for relief because his FTCA administrative claim was filed outside of the FTCA's statute of limitations set forth in 28 U.S.C. § 2401(b).

contrary rests upon the party asserting jurisdiction.'" *Pershing, L.L.C. v. Kiebach*, No. 15-30396, 2016 WL 1375874, at *1 (5th Cir. Apr. 6, 2016) (quoting *Kokkonen*, 511 U.S. at 377, 114 S. Ct. 1673).

"In reviewing a motion to dismiss under Rule 12(b)(1), we first determine whether the motion was a facial or factual attack on jurisdiction." *Braatz, L.L.C.*, 2016 WL 1253679, at *2. In the case *sub judice*, the Government's arguments pursuant to Rule 12(b)(1) present a factual attack on jurisdiction because the United States has filed supporting evidentiary materials. *See id.* "When a defendant makes a factual attack[,] 'no presumptive truthfulness attaches to plaintiff's allegations.'" *See Eagle TX I SPE, L.L.C. v. Sharif & Munir Enters., Inc.*, 602 F. App'x 576, 578 (5th Cir. 2015) (per curiam) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "To defeat a factual attack, a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)).

For the reasons stated below, Plaintiff has failed to meet his burden of proof in defeating the Government's factual attack on jurisdiction.

### C. Parties' Rule 12(b)(1) Arguments

The Government characterizes Plaintiff's case as follows: "[Plaintiff] seeks damages in the amount of $200,000.00 for harm allegedly caused by a July 18, 2007 decision by the [OWCP] that terminated his compensation benefits under [FECA]. . . . This suit is apparently a belated attempt

to have this Court review DOL's FECA determinations made in 2007 which terminated his compensation benefits, a decision long since reversed by OWCP in 2010."[18] The Government argues that 5 U.S.C. § 8128(b) "clearly precludes such judicial review" unless there is a "substantial cognizable constitutional challenge."[19] The Government maintains that "[t]o the extent that [Plaintiff's] FTCA suit is an attempt to seek tort damages relating to the FECA claim, FECA is [Plaintiff's] exclusive remedy for his work-related injury" and "[h]e is not permitted to also pursue damages under the FTCA."[20] The Government further maintains that this Court has no subject-matter jurisdiction, because the post-deprivation remedies available to Plaintiff were sufficient to assure that he received sufficient due process, even though the decision to terminate Plaintiff's disability benefits was undisputedly in violation of OWCP procedures. The Government maintains that although Plaintiff seeks recovery for, *inter alia*, the payment of his medical bills incurred during the period that his FECA benefits were terminated, Plaintiff's complaint does not allege that he ever attempted to seek payment by OWCP for such medical bills. Therefore, the Government argues that this suit is within the scope of FECA, that the available administrative remedies under FECA were sufficient to have OWCP's error reviewed and corrected, and that accordingly the Court has no subject-matter jurisdiction over the case.

Plaintiff argues in response that FECA is designed to compensate federal employees injured in the performance of their duties, but provides no compensation for his alleged damages, which Plaintiff claims are "not duty related," "did not occur while [P]laintiff was in the

---

[18] *See* Def.'s Mot. Dismiss [9] at 2.

[19] *See id.* at 3.

[20] *See id.*

performance of his work duties," and "were unforeseeable under FECA and for which FECA was neither designed nor intended."[21] Plaintiff argues that he has "been severely damaged by the acts of the [DOL] and OWCP in this case"; that Dr. Barkhaus notified these departments that retaining him as a referee medical examiner would be a conflict of interest; and that the DOL and OWCP decided to retain Dr. Barkhaus as a referee medical examiner in the case, despite "knowing or having reason to know that doing so was in direct conflict with and in violation of federal law."[22] Therefore, Plaintiff maintains that his case falls under the FTCA, is not within the scope of FECA, and that the Court has subject-matter jurisdiction over the case.

*D. Discussion and Analysis*

Courts may not exercise subject-matter jurisdiction in a suit against the United States unless the United States has waived immunity and consented to suit. *See United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S. Ct. 767, 85 L. Ed. 1058 (1941); *United States v. Shaw*, 309 U.S. 495, 501, 60 S. Ct. 659, 84 L. Ed. 888 (1940); *Bank One Tex. v. Taylor*, 970 F.2d 16, 33 (5th Cir. 1992), *cert. denied*, 508 U.S. 906, 113 S. Ct. 2331, 124 L. Ed. 2d 243 (1993). A waiver of sovereign immunity is strictly construed and thus must be unequivocally expressed by Congress. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980); *Sherwood*, 312 U.S. at 590, 61 S. Ct. at 771; *Interfirst Bank Dallas v. United States*, 769 F.2d 299, 306 n.10 (5th Cir. 1985), *cert. denied*, 475 U.S. 1081, 106 S. Ct. 1458, 89 L. Ed. 2d 716 (1986). "[N]o suit may be maintained against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued."

---

[21] *See* Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] at 4.

[22] *See id.* at 6.

*Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002). Because Plaintiff has asserted federal jurisdiction is proper, he has the burden to show such consent. *See id.*

Plaintiff asserts the appropriate statutory avenue in this case is the FTCA, not FECA.[23] "The question of whether the United States has waived sovereign immunity pursuant to the FTCA goes to the court's subject-matter jurisdiction, and may therefore be resolved on a Rule 12(b)(1) motion to dismiss." *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (internal citations omitted). FECA provides in pertinent part:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury . . . of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee . . . otherwise entitled to recover damages from the United States or the instrumentality because of the injury . . . in a direct judicial proceeding, in a civil action, . . . or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. 8116(c). This exclusive liability provision "was designed to protect the government from suits under statutes, such as the [FTCA]." *Lockheed Aircraft Corp.*, 460 U.S. at 193–94, 103 S. Ct. 1033. Because FECA is exclusive, a tort claim brought under the FTCA may not give supplemental effect to any remedy available under FECA. *United States v. Demko*, 385 U.S. 149, 152, 87 S. Ct. 382, 17 L. Ed. 2d 258 (1966). Thus, it is imperative to determine whether the case

---

[23] Plaintiff states on the civil cover sheet [1-1] accompanying his complaint that the nature of his suit is one arising under the Administrative Procedure Act (the "APA"). The APA "waives the federal government's sovereign immunity from actions seeking judicial review of federal administrative decisions only for claims 'seeking relief other than money damages.' " *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 416 (5th Cir. 2013) (quoting 5 U.S.C. § 702). However, because "the substance of the complaint at issue is a claim for money damages, the case is not one covered by [the APA] and, hence, sovereign immunity has not been waived [by the APA]." *See Armendariz–Mata v. U.S. Dep't of Justice, Drug Enf't Admin.*, 82 F.3d 679, 682 (5th Cir. 1996). Therefore, the Government has not consented to suit on this matter under the APA; Plaintiff must utilize another statutory avenue.

*sub judice* falls within the ambit of FECA; if it does, Plaintiff may not seek any relief, supplemental or otherwise, under the FTCA.

Furthermore, "if a claim is covered under FECA, then the federal courts have no subject[-]matter jurisdiction to entertain the action, since the United States has not otherwise waived its sovereign immunity to suit." *Heilman v. United States*, 731 F.2d 1104, 1109 (3d Cir. 1984); *see Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94, 103 S. Ct. 1033, 74 L. Ed. 2d 911 (1983); *Harvey v. Potter*, 202 F. App'x 2, 4 (5th Cir. 2006) (per curiam) (citing U.S.C. § 8116(c); *Benton v. United States*, 960 F.2d 19, 22 (5th Cir. 1992)). Thus, if Plaintiff's case falls within the ambit of FECA, this Court lacks subject-matter jurisdiction to hear his case.

FECA was enacted in 1916 as "the first comprehensive injury-compensation statute for federal employees" who have sustained work-related injuries; such employees are entitled under FECA to compensation for medical expenses, lost wages, and vocational rehabilitation. *United States v. Lorenzetti*, 467 U.S. 167, 168, 169, 176, 104 S. Ct. 2284, 81 L. Ed. 2d 134 (1984); *see* 5 U.S.C. §§ 8102–8107. " '[Through FECA] employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.' " *Ramirez v. Walker*, 199 F. App'x 302, 307 (5th Cir. 2006) (per curiam) (quoting *Lockheed Aircraft Corp.*, 460 U.S. at 194, 103 S. Ct. 1033). "The heart of the system is an implicit bargain: employees are granted surer and more immediate relief in return for foregoing more expensive rewards outside the system." *Gill v. United States*, 641 F.2d 195, 197 (5th Cir. 1981). Thus, "[f]or injuries within its coverage, FECA's remedy is exclusive of any other remedy, including the FTCA." *White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998); *accord United States v. Brown*, 348 U.S. 110, 113, 75 S. Ct. 141, 99 L. Ed. 139 (1954).

The FTCA was "enacted to waive the Government's sovereign immunity." *See Lockheed Aircraft Corp.*, 460 U.S. at 193, 103 S. Ct. 1033. The FTCA authorizes suits against the United States sounding in state tort for money damages arising from:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

In this case, Plaintiff's alleged injuries are his "adverse financial circumstances," which "beg[an] with the suspension of [his] benefits" as a result of OWCP's "terminat[ion of] [P]laintiff's compensation and medical benefits on July 18, 2007."[24] Unquestionably, Plaintiff's alleged damages were not sustained while in the performance of his duty as a federal employee, but after he had left employment and had stopped receiving disability benefits. However, FECA's exclusive remedy position bars not only claims for physical injuries compensable under FECA, but also claims for injuries that <u>derive from</u> the physical injury. *See Benton*, 960 F.2d at 21. Plaintiff's out-of-pocket medications and medical expenses, including health insurance, stem from his FECA-compensated injury. His legal expenses of $32,551.05 also derive directly from his FECA benefits determination and in pursuit of the reinstatement of his FECA benefits. Thus, Plaintiffs' injuries derive from his FECA benefits determination.

Plaintiff's claims may be viewed either as an attempt to challenge the propriety of OWCP's earlier benefits termination decision or an attempt to recover damages for OWCP's breach of its duty to follow its own procedures with respect to its earlier benefits termination decision.

---

[24] *See* Pl.'s Compl. [1] ¶¶ 10, 6; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶¶ 10, 6.

However, as the ancient idiom goes, "all roads lead to Rome"; either way the claims are viewed, they fall within FECA's preclusion on judicial review. No liability could be assessed in this case without first examining the conclusions of law and fact made by the Secretary in the FECA benefits determination. Such analysis is prohibited by FECA's "strongly worded judicial door-closing statute." *See Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1437 (7th Cir. 1996). FECA provides that "[t]he Secretary of Labor, in accordance with the facts found on review, may—end, decrease, or increase the compensation previously awarded." 5 U.S.C. § 8128(a)(1). And "[FECA] limits judicial review of [such] OWCP decisions," *Beemer v. Holder*, 495 F. App'x 396, 398 (5th Cir. 2012) (per curiam), through its "unambiguous and comprehensive provision barring any judicial review of the Secretary of Labor's determination of FECA coverage," *Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90, 112 S. Ct. 486, 116 L. Ed. 2d 405 (1991) (internal quotation marks and citation marks omitted). FECA provides in pertinent part: "The action of the Secretary [of Labor] or his designee in allowing or <u>denying a payment under this [Act] is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and</u> (2) <u>not subject to review</u> by another official of the United States or <u>by a court</u> by mandamus or otherwise." 5 U.S.C. § 8128(b) (emphases added). Accordingly, Plaintiff is "prohibited from challenging the merits of the [DOL's] decision to [terminate] his [disability] benefits, as such review on the merits of any aspect of his claim is precluded under 5 U.S.C. § 8218(b)." *See Ramirez*, 199 F. App'x at 307. This Court is without jurisdiction to review the DOL's earlier decision to terminate Plaintiff's FECA benefits.

However, federal courts have recognized two exceptions wherein they nonetheless may exercise jurisdiction over a final decision of the Secretary under FECA: (1) a constitutional claim

12

and (2) a claim that the Secretary violated a clear statutory mandate or prohibition. *See Taylor v. Potter*, 124 F. App'x 293, 2005 WL 746617, at 1 (5th Cir. 2005) (per curiam) (citing *Woodruff v. United States*, 954 F.2d 634, 639 (11th Cir. 1992)).

With respect to the first exception, the Fifth Circuit has recognized that in limited situations "[a] court may review an OWCP decision . . . if there are 'substantial constitutional claims,' such as those arising from a due process violation." *Beemer*, 495 F. App'x at 399 (citing *Garner v. U.S. Dep't of Labor*, 221 F.3d 822, 824–25 (5th Cir. 2000), *cert. denied*, 532 U.S. 906, 121 S. Ct. 1230, 149 L. Ed. 2d 140 (2001)). In this case, Plaintiff never mentions, references, or even hints at a constitutional provision. The substance of Plaintiff's complaint is simply that OWCP wrongfully terminated his benefits as a result of Dr. Barkhaus' examination as a referee medical examiner in violation of OWCP procedures in OWCP Procedure Manual 3-0500-4b(3)(a) and that Plaintiff should recover monetary damages as a result. Even assuming Plaintiff has a constitutional due process claim that the Government deprived him of a substantive entitlement in the continued payment of FECA benefits, however, the termination of his benefits would not constitute a violation of the procedural requirements of the due process clause if a meaningful post-deprivation remedy for the loss was available. *See Schwartz v. U.S. Dep't of Labor*, 161 F. App'x 357, 358 (5th Cir. 2005) (citing *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

ECAB issued its decision to terminate Plaintiff's benefits on July 18, 2007.[25] As a result, Plaintiff was without benefits for approximately two years and nine months until his attorney sent

---

[25] *See* Pl.'s Compl. [1] ¶ 6; Def.'s Mot. Dismiss [9] at 4; Tritz Decl. [9-1] ¶¶ 9–10; DOL Employees' Comp. Appeals Bd. Decision & Order [9-2] at 3; Pl.'s Resp. Aff. & Br. Opp'n to Def.'s Mot. Dismiss [13] ¶ 6, 5.

13

a letter to the DOL requesting reconsideration of the benefits termination on April 23, 2010.[26] About four months later, on September 1, 2010, the DOL entered a Notice of Decision stating as follows: "The Office finds that the new evidence presented sufficiently supports the fact that Dr. Barkhaus' report must be excluded and cannot resolve a conflict in the medical evidence according to set criteria. . . . The decision . . . is VACATED and set aside. Your claim is open for medical care and your compensation will be reinstated . . . ."[27] Other than requesting reconsideration by the OWCP, Plaintiff apparently pursued no further post-deprivation remedies to him available under FECA, such as reimbursement for his medical bills incurred during the time that his FECA benefits were terminated. Because his claim is "open for medical care,"[28] he is able to seek reimbursement for any qualifying medical expenses incurred during the time his FECA benefits were terminated. Other damages he seeks may not be compensable under FECA; nevertheless, those damages do not entitle him to bring a claim under the FTCA for the reasons stated above.

In addition, Plaintiff makes no allegations that FECA's post-deprivation remedies are constitutionally inadequate. *See Schwartz*, 161 F. App'x at 358–59. The Fifth Circuit has stated: "[T]he post-deprivation remedies available to FECA claimants are sufficient to assure that claimants receive sufficient due process, even in situations where there were violations of OWCP procedures." *See id.* at 359; *see also Czerkies*, 73 F.3d at 1443 ("The government does not violate the Constitution every time it mistakenly denies a claim for benefits."). Therefore, for all of the

---

[26] *See* Pl.'s Request for Recons. to DOL/OWCP [9-4] at 1.

[27] *See* DOL Office of Workers' Comp Programs Notice of Decision [9-5] at 4, 5.

[28] *See* DOL Office of Workers' Comp Programs, Senior Claims Examiner, Letter [9-5] at 2; DOL Office of Workers' Comp Programs Notice of Decision [9-5] at 5.

14

foregoing reasons, the Court finds that Plaintiff has failed to bring a cognizable constitutional violation claim that would constitute an exception to FECA's bar on judicial review.

Although Fifth Circuit case law is replete with analyses of the first exception to FECA's bar on judicial review, it is bereft with respect to the second exception—and other circuits have not spoken in unison on the issue. *Compare McDougal-Saddler v. Herman*, 184 F.3d 207, 213–14 (3d Cir. 1999) (finding no exception for clear statutory violations); *Paluca v. Sec'y of Labor*, 813 F.2d 524, 527–28 (1st Cir. 1987) (same) *with Hanauer v. Reich*, 82 F.3d 1304, 1307–1309 (4th Cir. 1996) (determining that federal courts have jurisdiction to hear claims that government violated clear statutory mandate); *Woodruff*, 954 F.2d 634, 639–40 (11th Cir. 1992) (same); *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278 (9th Cir. 1988) (same). Nonetheless, even assuming an exception for clear statutory violations exists in the Fifth Circuit, such a claim is untenable in this case.

Congress has conferred on the Secretary of Labor <u>absolute authority</u> to enforce and administer FECA. 5 U.S.C. § 8145. FECA provides in pertinent part that "[t]he Secretary of Labor may prescribe rules and regulations necessary for the administration and enforcement of this subchapter including rules and regulations for the conduct of hearings" and that "the Secretary may determine the nature and extent of the proof and evidence required to establish the right to benefits under this subchapter." 5 U.S.C. § 8149. The Secretary "has the 'sole discretionary power' to determine in the first instance" whether to make an award of FECA benefits in a particular case. *See Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37, 102 S. Ct. 38, 70 L. Ed. 2d 23 (1981) (quoting *Buckley v. Valeo*, 424 U.S. 1, 112 n.153, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)). The Secretary is vested with broad policy-making authority

to "prescribe rules and regulations necessary for the administration and enforcement" of FECA. 5 U.S.C. § 8149; *see Morton v. Ruiz*, 415 U.S. 199, 231, 94 S. Ct. 1055, 39 L. Ed. 2d 270 (1974) ("The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."). With respect to referee medical examiners, FECA provides in pertinent part that "[i]f there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall make an examination." 5 U.S.C. § 8123(a). The Secretary's rule-making powers obviously include those rules pertaining to the appointment of the third physician. The Court must thus afford the Department of Labor deference to interpret FECA.

Pursuant to this rulemaking power, the Secretary passed the procedural rule that the parties agree the Government violated in terminating Plaintiff's benefits based on Dr. Barkhaus' report. However, an administrative procedural violation does not equate to a statutory violation. *See Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988) ("[R]eview may be had only when the agency's error is patently a misconstruction of the Act, . . . or when the agency has disregarded a specific and unambiguous statutory directive, . . . or when the agency has violated some specific command of the statute . . . . Garden-variety errors of law or fact are not enough."). Absent a separate statutory provision prohibiting the Government from allowing physicians who are employed by or associated with federal agencies to serve as referee medical examiners, Plaintiff has no valid claim on this ground. The Secretary violated a procedural rule passed in its discretion—not a clear statutory mandate. For all of these reasons, even if such a claim were

recognized in the Fifth Circuit, Plaintiff has failed to bring a cognizable statutory violation claim that would constitute an exception to FECA's bar on judicial review.

In sum, because Plaintiff has failed to state a claim upon which the Court would have subject-matter jurisdiction, the Government's motion to dismiss is well taken.

### E. Conclusion

Accordingly, the Government's motion to dismiss [9] is GRANTED pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure due to lack of subject-matter jurisdiction. Plaintiff may pursue post-deprivation remedies available to him under the Federal Employees' Compensation Act through the Department of Labor. This case is DISMISSED WITHOUT PREJUDICE.

An order in accordance with this opinion shall issue this day.

THIS, __31__ day of May, 2016.

_____
SENIOR U.S. DISTRICT JUDGE